**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LESTER PEARL THOMAS,

        Plaintiff,

v.                                CIVIL CASE NO. 05-72851
                                      HON. MARIANNE O. BATTANI

GENERAL MOTORS CORPORATION, *et al.*,

        Defendants.

_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

    Before the Court is Defendant's Motion for Summary Judgment (Doc. #21). Plaintiff

filed a Four Count Complaint alleging violations of Title VII, 42 U.S.C. § 1981, and the Age

Discrimination in Employment Act ("ADEA"), for race and age discrimination and retaliation.

**II.    STATEMENT OF FACTS**

    Lester Pearl Thomas ("Thomas") began her employment with General Motors

Corporation ("GM") in April 1976 as an hourly employee. In July, 1978, Thomas became a

salaried employee. She was promoted several times during her tenure with GM including an

August 1989, promotion to Senior Data Preparation Operator, an April 1998, promotion to

Specialized Clerk, and a June 2000, promotion to Office Supervisor. Pl.'s Resp. Br., at 1.

    In June 2001, Thomas was transferred to the Personnel Department at GM and reported

to Mike Rhadigan. In October 2001, Lori Brewster became Thomas's supervisor. Thomas

characterized Brewster's supervision as "constant nit-picking, and finding fault in mostly all of

1

my work, she singled me out, she treated me differently, she accused me of underperforming, she harassed me." Dep. of Thomas at 32. Some of the ways in which Thomas contends that she was treated differently from her co-workers during her time in the Personnel Department include: she had to notify her supervisor in writing in advance when she wanted to take a vacation day; she was required to shred confidential documents and send out letters to hourly employees on sick leave; she was denied the opportunity to receive training in labor relations while her white co-workers were permitted; and, a partition was erected in the office that separated her from her white co-workers. Dep. of Thomas at 36, 67, 158, 165-167; Pl.'s Compl.; Dep. of Brewster at 42.

On the other hand, Brewster felt that Thomas had difficulty completing her assignments in a timely and professional manner. Dep. of Brewster at 9-10. She expressed her displeasure with Thomas's work in her 2002 and 2003 performance evaluations and assessed Thomas's performance level as "needs improvement." Def.'s Exs. 11 and 12, Performance Evaluations.

In the latter part of 2003, Thomas was assigned to assist Patricia Chatman, the Safety Supervisor. Dep. of Chatman at 6. In evaluating Thomas's assigned tasks, Chatman informed Thomas that she made errors in the safety observation tour reports and the safety talk tour reports. Dep. of Thomas at 230.

In February 2004, Brewster transferred to another GM facility and Thomas once again reported to Mike Rhadigan. Like Brewster and Chatman, Rhadigan noticed errors in Thomas's work. For example, he noted that Thomas repeatedly entered incorrect information when updating the safety report and failed to satisfactorily prepare the minutes of a monthly P.S.R.B. meeting. Dep. of Rhadigan at 22-23, 29.

On April 1, 2004, April 27, 2004, and May 6, 2004, Thomas sent letters to various members of GM management alleging age and race discrimination and a hostile work environment.  Def.'s Ex. 7, Thomas Letters.  In a May 12, 2004, letter, Kevin McKittrick, Human Resources Manager at GM, responded to Thomas's letters and informed her that GM would need her assistance in investigating her allegations.  Def.'s Ex. 8, McKittrick Letter. Thomas refused to cooperate in the investigation.  Subsequently, GM informed Thomas that her allegations had been investigated and GM found no basis to support them.

On March 10, 2004, Thomas was placed on a Performance Improvement Plan ("PIP") by Ray Kenney, the Plant Personnel Director, due to unsatisfactory work performance.  Def.'s Ex. 15, PIP.  Shortly after being placed on the PIP, Thomas went on disability leave for work-related stress and did not return until December 2004.  Dep. of Thomas at 233.  Because Thomas did not complete the tasks assigned to her in the PIP prior to going on medical leave, Mike Rhadigan informed her that she must complete the assignments in the PIP upon her return.  Dep. of Thomas at 234-238.  Thomas failed to adequately complete the assignments.  Dep. of O'Berry at 37.  On April 18, 2005, Sharon O'Berry, GM's new Plant Personnel Director, notified Thomas that she had failed to complete the PIP and her employment with GM was terminated effective immediately.  Def.'s Ex. 17, Termination Letter.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed.

1979)).  To create a genuine issue of material fact, the nonmovant must do more than present

some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken

as a whole could not lead a rational trier of fact to find for the non-moving party.'"  Mich. Paytel

Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, the mere existence of a

scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient

evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at

252.

IV.     ANALYSIS

A.      Plaintiff's Race and Age Discrimination Claims

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for

an employer . . . to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin."  42 U.S.C. § 2000e-2(a)(1).  Similarly, the ADEA makes it unlawful for an

employer to discriminate against its employees on the basis of age.  29 U.S.C. § 623(a)(1).

Claims of discrimination brought pursuant to the ADEA and Title VII are analyzed under the

same framework.  Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002).

Section 1981 claims are also analyzed under the Title VII McDonnell Douglas/Burdine burden

shifting analytical framework.  Newman v. Fed. Ex. Corp., 266 F.3d 401, 406 (6th Cir. 2001).

Under the <u>McDonnell Douglas</u> burden shifting analytical framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir. 1995). When the plaintiff has no direct evidence of discrimination, she must show that: "(1) [s]he is a member of a protected group; (2) [s]he was subjected to an adverse employment decision; (3) [s]he was qualified for the position; and (4) [s]he was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." <u>Peltier v. U.S.</u>, 388 F.3d 984, 987 (6th Cir. 2004).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). If that burden of production is met, a plaintiff must then prove "by a preponderance of the evidence" that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). To meet this burden, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. <u>Manzer v. Diamond Shamrock Chems. Co.</u>, 29 F.3d 1078, 1083 (6th Cir. 1994). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit" a finding of unlawful discrimination. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 148 (2000).

Plaintiff proffers no direct evidence of age or race discrimination by GM. She admits that no remarks, comments or statements were made about her age or her race. Dep. of Thomas at 257-261. Also, Plaintiff does not know who made the decision to terminate her employment.

Id., at 302. Thus, she can not offer any evidence that Lori Brewster or any of her other supervisors had any input into the decision to terminate her employment.

Because Plaintiff provides no direct evidence of age or race discrimination, she must satisfy the four prong, burden-shifting test set forth above to establish her prima facie case. It is undisputed that Plaintiff is a member of a protected group, and thus, she satisfies the first prong. Because Plaintiff was terminated, she also satisfies the second prong. Def.'s Ex. 17, Termination Letter.

In order to satisfy the third prong, Plaintiff must show that she was qualified for the position. Peltier, 388 F.3d at 987. During her tenure at GM, Plaintiff earned both an Associate's Degree and a Bachelor's Degree. Pl.'s Ex. 1 and 2, Degrees. Prior to being transferred to the Personnel Department in 2001, she worked in several other roles at GM. Plaintiff was promoted several times during her twenty-nine years at GM. Pl.'s Ex. 4-6, Promotions. Plaintiff has met her burden of showing that she possessed the education and experience necessary to be considered qualified for her position in the Personnel Department.

As to the fourth prong of her prima facie case, she must show that she was replaced by a person outside the protected class, or that similarly situated non-protected employees were treated more favorably. Peltier, 388 F.3d at 987. After her termination, Plaintiff was not replaced by any individual. So the first portion of the fourth prong is not at issue. In order for Plaintiff to establish that Defendant treated similarly situated employees more favorably than her, she must show that those employees were nearly identical in "all of the relevant aspects of [her] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Insurance Co., 40 F.3d 796 (6th Cir.

1994)). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) ((citations omitted)). See also Talley, 61 F.3d at 1247.

Plaintiff asserts that Anita Flannigan, Mike Whitman, and Debbie Medlen were treated differently. Dep. of Thomas at 54-55. Anita Flannigan is an African-American who is older than Plaintiff. Id., at 45. Because Anita Flannigan is older than Plaintiff and of the same race, she can not be used as an example of a non-protected employee. See Peltier, 388 F.3d at 987.

Plaintiff characterized Mike Whitman as a "young, white male." Id., at 55. She testified that Whitman was a Floor Supervisor on the plant floor, and was not employed in the Personnel Department. Id., at 53. Plaintiff also testified Whitman worked with Rhadigan and Brewster before she went on sick leave, but departed by the time that she returned. Id., at 53-54. Because Whitman was not employed in the Personnel Department, and only temporarily reported to Rhadigan and Brewster, if at all, he cannot be deemed similarly situated in "all of the relevant aspects of his employment situation." Ercegovich, 154 F.3d at 352.

Plaintiff testified that Debbie Medlen is a Caucasian woman who is a "little younger" than her. Dep. of Thomas at 45-46. Medlen did not state her age during her deposition. Because Plaintiff has no evidence, other than pure speculation, that Medlen is outside the protection of the ADEA in both her brief and exhibits, she cannot use Medlen as an example of a

non-protected employee for purposes of her age discrimination claim. Thus, Plaintiff's age discrimination claim must fail at this point.

However, as a Caucasian, Medlen can be used as an example of an employee who was treated more favorably than Plaintiff for her race discrimination claims if it can be established that she was similarly situated. Medlen testified that she is a Specialized Clerk in the Personnel Department and has worked in the department for about ten years. She also testified that she "cross-trained" with Brewster to learn Plaintiff's job and even performed it "for a little bit". Dep. of Medlen at 5 and 7. Thus, Medlen was similarly situated in "all of the relevant aspects of [her] employment situation." Ercegovich, 154 F.3d at 352. Plaintiff contends that Medlen was permitted to participate in labor relations training and attend negotiation sessions, while this opportunity was denied to her. Dep. of Thomas at 61. Although Medlen did not testify that she was permitted to participate in these activities in her deposition and Plaintiff provides no written documentation illustrating Medlen's participation, no evidence has been proffered to refute Plaintiff's contention. However, because the evidence must be considered "in a light most favorable to [Plaintiff]", this Court must accept Plaintiff's assertion that Medlen was treated more favorably. See Hunt, 526 U.S. at 549; Sagan, 342 F.3d at 497. Thus, Plaintiff has established her prima facie case of race discrimination.

The burden now shifts to Defendant to set forth a legitimate nondiscriminatory reason for the adverse employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Defendant states that Plaintiff's employment was terminated due to unsatisfactory work performance. "Poor performance is a legitimate non-discriminatory reason for terminating an employee." Stockman v. Oakcrest Dental Ctr., 480 F.3d 791, 802 (6th Cir. 2007). See also

Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1116 (6th Cir. 2001).  The negative comments and evaluations of three superiors provide sufficient evidence that Plaintiff's termination was not merely a pretext.

Because Defendant has met its burden of production, Plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. Manzer, 29 F.3d at 1083.  Plaintiff contends the negative performance evaluations were designed to ultimately terminate her employment with GM.  Pl.'s Resp. Br., at 10.  She states that Lori Brewster's negative comments and evaluations stemmed from a "vicious campaign of harassment aimed at attacking Plaintiff's work performance."  Id., at 2.

However, she does not make similar allegations against Patricia Chatman, an African American female, and Mike Rhadigan who also evaluated her work.  In evaluating Plaintiff's performance, Chatman found errors in the safety observation tour reports and the safety talk tour reports completed by her.  Dep. of Chatman at 6.  Rhadigan also noted that Plaintiff repeatedly entered incorrect information on the Safety Wall Report, one of her assigned responsibilities. Dep. of Rhadigan at 7.  Chatman and Rhadigan also testified that Plaintiff's preparation of the minutes of the PSRB meeting was unsatisfactory, even though a co-worker spent "quality time" in assisting her on how to properly take the minutes.  Dep. of Chatman at 8, 14-15, Def.'s Ex. 5, Dep. of Rhadigan at 30, and Def.'s Ex. 16, Pl.'s Letter.  Because Plaintiff has offered no evidence to refute the negative comments and evaluations of Chatman and Rhadigan, there can be no rational basis for a jury to reject GM's explanation for terminating her employment.  Thus, Plaintiff's race discrimination claim must fail at this point.

**B.      Plaintiff's Retaliation Claim**

In order to establish a prima facie case of Title VII retaliation, a plaintiff must prove that: (1) he engaged in activity protected by Title VII; (2) the exercise of a protected right was known to the defendant; (3) the defendant subsequently took an adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'  Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(quoting Washington, 420 F.3d at 662)." Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006). After a plaintiff establishes a prima facie case, the defendant then has the burden of production of evidence to "articulate some legitimate, nondiscriminatory reason" for its actions.  Morris, 201 F.3d at 793 (quoting McDonnell Douglas, 411 U.S. at 802).  Once the defendant establishes a legitimate, nondiscriminatory reason for its actions, the plaintiff, who bears the burden of persuasion throughout the entire process, must then demonstrate "that the proffered reason was not the true reason for the employment decision."  Burdine, 450 U.S. at 256.

In order for Plaintiff to establish a prima facie case of Title VII retaliation, she must first prove that she engaged in activity protected by Title VII.  Morris, 201 F.3d at 792.  Participation in a prior lawsuit against Defendant for discrimination and submitting letters to management about perceived discrimination would certainly be activities that Title VII was intended to protect.

Second, Plaintiff must prove that the exercise of a protected right was known to Defendant. Id. Because Defendant was a party to the lawsuit referenced by Plaintiff, over twenty years ago, it knew that Plaintiff was a party in that suit when it was defending itself. Also, Plaintiff sent her letters regarding the allegations of discrimination directly to GM management. Def.'s Ex. 7, Thomas Letters. GM's Human Resources Manager directly responded to Thomas's letters and asked for her assistance in investigating her allegations. Def.'s Ex. 8, McKittrick Letter. The facts clearly illustrate that Defendant knew of Plaintiff's involvement in exercising her Title VII rights in both instances.

Third, Plaintiff must prove that Defendant subsequently took an adverse employment action against her, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor. Morris, 201 F.3d at 792. Again, an adverse employment action includes "termination of employment." Kocsis, 97 F.3d at 886. Because Defendant terminated her, this prong is also satisfied.

Lastly, Plaintiff must prove that there was a causal connection between the protected activity and the adverse employment action or harassment. Morris, 201 F.3d at 792. Plaintiff claims that Brewster's negative performance reviews and the subsequent PIP were retaliation for letters that she sent to Defendant complaining of discrimination and her participation in a class action lawsuit against Defendant over 20 years ago. Pl.'s Resp. Br., at 13; Pl.'s Compl. Plaintiff fails to explain how Brewster's negative performance reviews could be retaliation for Plaintiff's letters complaining of discrimination when the performance reviews are from 2002 and 2003 and Plaintiff did not send her first letter to GM management until April 1, 2004. Def.'s Ex. 11 and

12, Performance Evaluations; Def.'s Ex. 7, Thomas Letters.  In fact, Brewster transferred from the Personnel Department to another GM facility before the first letter was even sent.[1]

Plaintiff also fails to explain how Defendant's decision to place her on a PIP was retaliatory when it was based upon the negative comments and evaluations of three supervisors. Although Plaintiff discounts Brewster's opinions of her performance as being part of a "vicious campaign of harassment," she does not assert that Patricia Chatman's and Michael Rhadigan's negative comments about her performance were unjustified.  Pl.'s Resp. Br., at 2.

Plaintiff also alleges that the negative performance reviews she received, and the subsequent PIP, were retaliation for her prior participation in a class action lawsuit involving Defendant.  However, she fails to prove that the individuals accused of retaliating against her had any knowledge of the class action lawsuit dating back to 1983.  Dep. of Thomas at 10; Dep. of Brewster at 33-34; Dep. of O'Berry at 34.  Moreover, given the twenty year period between the termination and the lawsuit, any causal link is broken by the extreme gap in time between the protected activity and the termination.  If her participation in the lawsuit motivated Defendant to terminate her employment, it is highly unlikely GM would have waited twenty years to retaliate. Because Plaintiff has failed to prove that there was a causal connection between the protected activity and the adverse employment action, her retaliation claim must fail at this point.

---

[1] At oral argument, Plaintiff's counsel stated that Plaintiff had been complaining of disparate treatment throughout this time period, but does not support that assertion with a citation to anything in the voluminous records submitted to the Court.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED. IT IS FURTHER ORDERED** that because the individually named Defendants were never served, they are hereby **DISMISSED** from this suit.

**IT IS SO ORDERED.**


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED: September 10, 2007


## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK